IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TYESHAWN RIVERS, *et al.*,<br><br>      Defendants. | Criminal No. JKB-19-0036 |

**DEFENDANT TYESHAWN RIVERS' MOTION TO SUPPRESS
EVIDENCE OBTAINED FROM SEARCH OF INSTAGRAM ACCOUNT**

Defendant Tyeshawn Rivers moves to suppress all direct and derivative evidence obtained through the search of his Instagram account. As detailed below, the search of Mr. Rivers Instagram account violated the Fourth Amendment because (1) the warrant authorizing the search was not supported by probable cause, (2) the scope of the warrant was impermissibly broad, and (3) the government kept every communication it obtained from Instagram despite promising to seize only specific material described in the warrant.

## BACKGROUND

On November 19, 2020, the government applied for a warrant to search "ten Instagram accounts," including the Instagram account belonging to Mr. Rivers. *See* Sealed Ex. A at SW76-0004 ¶ 1(iv). In the accompanying affidavit, ATF Special Agent Lindsey Erbe referred to the original, January 2019 indictment in this case, which charged sixteen defendants—but not Mr. Rivers (who was added only in the Second Superseding Indictment)—with participating in a narcotics conspiracy and a conspiracy to possess a firearm in furtherance of drug trafficking. *Id.* ¶ 11. The affidavit then states that the government continues to investigate the indicted individuals as well as a number of unindicted co-conspirators, including Mr. Rivers. *Id.* ¶ 12.

1

Of the affidavit's 48 paragraphs, only one discusses Mr. Rivers Instagram account. That paragraph first states that "Investigators believe RIVERS to be a member of the 'CCC'" based on cell phone records that allegedly show Mr. Rivers having "conversations with CCC members arranging criminal events." *Id*. ¶ 19. The affidavit gives one example of a text exchange with Mr. Rivers, which took place on April 20-21, 2018, when Mr. Rivers allegedly discusses plans to rob a dice game. *Id*. ¶ 13. The affidavit then states that Mr. Rivers and "R.S., an associate of 'CCC'" were arrested in October 2020 and were in "possession of a loaded firearm and approximately 265 gelcaps of suspected heroin, 116 ziplocs of suspected crack cocaine, and a bag containing approximately four grams of crack cocaine." *Id.* ¶ 19. "R.S." has never been charged as a CCC member however, and the government does not explain how Mr. Rivers October 2020 arrest is tied to the alleged CCC conspiracy, let alone to his Instagram account.

Indeed, the affidavit does not provide any specific justification for searching Mr. Rivers' Instagram account at all. Instead, the affidavit states only that Mr. Rivers left a comment on an Instagram post from co-defendant Desmond Butler, whose post had stated, "all the wrong i did i know nothing good going come from that 100%." *Id.* ¶ 18. In commenting on Butler's generic expression of regret for past misdeeds, Rivers wrote, "Ain't no question 100 Respect []." *Id.* ¶ 19. That post does not suggest a link between a criminal act and Mr. Rivers' Instagram account. Instead, Special Agent Erbe spoke generally: The Instagram accounts of drug traffickers or criminal gang members "frequently contain evidence of their criminal activities" (*id*. ¶ 7), and Instagram information "may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation" (*id.* ¶ 43).

The government asked to search essentially the entire contents of Mr. Rivers' Instagram account based on the information in the affidavit, including "[a]ll communications or other messages sent or received" from Mr. Rivers' Instagram account over nearly four years—from January 1, 2017, until November 19, 2020. *Id.* at SW76-0026.

While the government sought broad access to Mr. Rivers' account in order to conduct a search, the government assured the reviewing magistrate that it would only *seize* information "that constitutes fruits, evidence and instrumentalities" of specific federal crimes, including participation in a racketeering conspiracy, and conspiracy to distribute narcotics. *Id.* at ¶ 45 ("Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B."); *Id.* at SW76-0026 (listing information to be seized by the government). The government further assured the magistrate that it would "make reasonable efforts to use methods and procedures that will locate and expose" items specifically listed in the warrant "while minimizing the review of information not within the list of items to be seized." *Id.* at SW76-0027.

The government did not follow through with those assurances, however. Instead, after obtaining the full contents of Mr. Rivers' Instagram account in December 2020, the government kept everything, without taking any steps to retain only items specifically listed in the warrant. The government produced the entire contents of Mr. Rivers' Instagram account to counsel for all the defendants in late 2022, including private, personal communications unrelated to this case. As the below examples illustrate, the government's files contain Mr. Rivers' private conversations with his siblings and even discussions with friends and family about their struggles with depression:





The warrant at issue did not authorize the government to seize private communications between Mr. Rivers and his family that have nothing to do with this case, but that is exactly what the government did. Indeed, the government has not identified any specific records that it believes it is entitled to seize from Mr. Rivers Instagram account.[1] Instead, the government simply kept the entire contents of Mr. Rivers account for two years and counting.

---

[1] The government identified relevant Instagram communications from some of Mr. Rivers' co-defendants in September 2022, but none of those communications comes from Mr. Rivers' account, or even includes him as a participant.

**ARGUMENT**

**A. The warrant application did not establish probable cause to believe that Mr. Rivers' Instagram account would contain evidence of specified federal crimes.**

Because individuals have a legitimate expectation of privacy in social media content that is not available to the public, the government could not search Mr. Rivers' private Instagram messages without a warrant supported by probable cause. *See United States v. Chavez*, 423 F. Supp. 3d 194, 205 (W.D.N.C. 2019) ("Because Defendant has a legitimate expectation of privacy in his non-public Facebook content, the Fourth Amendment commands officers to obtain a valid warrant before searching that content.") (citing *United States v. Lyles*, 910 F.3d 787, 791 (4th Cir. 2018)). To establish the necessary probable cause, the government must demonstrate a nexus between the account that it seeks to search and the alleged crimes under investigation. *See, e.g.*, *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) (affidavit for warrant to search a residence was "deficient because it fail[ed] to establish a nexus between the drug activity [under investigation] and the location that was searched"). Here, the affidavit did not establish the necessary nexus between Mr. Rivers' Instagram account and the crimes under investigation.

The Fourth Amendment "ensure[s] that [a] search will be carefully tailored to its justifications, and will not take the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). To guard against uncontrolled fishing through a person's private thoughts, the Fourth Amendment requires the government to establish "a fair probability that contraband or evidence of a crime will be found in [the] particular place" to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Even when there is probable cause to believe that "a person is engaged in criminal activity," the government does not have "*carte blanche* to search all their personal effects." *United States v. Orozco*, 41 F.4th 403, 409 (4th Cir. 2022). Rather, the government must separately demonstrate "some nexus between the

5

suspected crime and the place to be searched—a substantial likelihood that evidence of a crime will be found in a particular place." *Id.* (emphasis and quotation marks omitted)

Here, the warrant application offered no reason to conclude that evidence of the enumerated crimes would be found in Mr. Rivers' Instagram account. Indeed, other than pointing to a five-word comment left by Mr. Rivers on one post by one co-defendant, the application did not discuss the contents of Mr. Rivers' Instagram account at all. Rather, the government maintained that because Mr. Rivers was allegedly involved in criminal activity, and because he and some of his co-defendants had Instagram accounts, then the government was entitled to nearly four years' worth of Mr. Rivers' private Instagram communications—on the theory that an Instagram account "may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation." Sealed Exhibit A ¶ 43. In other words, the government wanted to go fishing. But the boilerplate statements in the search warrant affidavit do not justify the fishing trip. *See United States v. Wilhelm*, 80 F.3d 116, 119 (4th Cir. 1995) (rejecting "warrants based on conclusory allegations"); *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 347 (4th Cir. 2021) ("By rejecting the general warrant, the Constitution rejects searches based on loose, vague or doubtful bases of fact, which even before the creation of our government, we deemed obnoxious to fundamental principles of liberty.") (quotation marks omitted).

**B. The warrant lacked sufficient particularity.**

Even if the government had established the necessary probable cause, the warrant was unconstitutionally overbroad because the material to be searched was not described with sufficient particularity. Under the Fourth Amendment, a warrant may "be no broader than the probable cause on which it is based." *United States v. Hurwitz*, 459 F.3d 463, 473 (4th Cir. 2006).

The Instagram warrant sought "[a]ll communications or other messages sent or received"

from Mr. Rivers' Instagram account over a nearly four-year period beginning on January 1, 2017. Sealed Exhibit A at SW76-0026. At the beginning of this four-year period, moreover, Mr. Rivers was still only 17 years old; he did not turn 18 until late November 2017. And the earliest alleged crime identified in the government's application did not take place until April 21, 2018. Ex. A ¶¶ 13–14. Nothing in the government's application justifies, or even attempts to justify, searching nearly four-years' worth of private communications, including the private communications of a minor.

### C. Despite its assurance in the warrant application, the government failed to limit its seizure to information identified in the warrant.

Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure may permit the government to obtain a broad set of electronically stored information for later review, but the government must promptly search that information and return nonresponsive records to ensure compliance with the Fourth Amendment. "Although there is no established upper limit as to when the government must review seized electronic data to determine whether the evidence falls within the scope of a warrant, courts have recognized that the Fourth Amendment requires the government to complete its review . . . within a reasonable period of time." *United States v. Wey*, 256 F. Supp. 3d 355, 383 (S.D.N.Y. 2017) (quotation marks omitted) (collecting authority). Here, the government ignored the limitations it promised to follow when it sought the warrant, and instead engaged in an unconstitutionally overbroad seizure of Mr. Rivers' private communications.

The government has ignored the limitations contained in its own warrant applications repeatedly in this case, as this Court recognized when it addressed the government's similar unlimited retention of Mr. Rivers' iCloud data. The Court's October 19, 2022 order held that "the Government cannot continue to meaningfully retain access to [Mr. Rivers' iCloud] data beyond what it has already identified as responsive to the warrant." Dkt. 986 ¶ 9(a). Because the

government "had access to the iCloud data since at least February 2021"—"an ample amount of time to conduct the necessary review"—ongoing "access to search through the data beyond what the Government has already identified as responsive in its report would be unreasonable." *Id.*

The government obtained the contents of Mr. Rivers' Instagram account in December 2020. Despite having Mr. Rivers' Instagram account data for over two years, and the Court's prior order regarding similar iCloud account information, the government has apparently made no effort to identify any specific records from Mr. Rivers' Instagram account that it is entitled to seize. Instead, the government has kept everything it obtained from Mr. Rivers Instagram account—including private communications with family members and friends that have nothing to do with this case—for well over two years. That is not what the government's warrant application promised, and it is not permitted by the Fourth Amendment.

**D. The good-faith exception to the exclusionary rule does not apply to the search and seizure of Mr. Rivers' Instagram account.**

Finally, the government may not rely on the good-faith exception to prevent suppression of material seized from Mr. Rivers' Instagram account. Although the Fourth Amendment does not require suppression of evidence seized by officials who relied in good faith on a warrant authorized by a magistrate judge, that exception does not apply here because the warrant "is based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 915 (1984) (quotation marks omitted). The search warrant "cannot be a mere ratification of the bare conclusions of others" set forth in an affidavit "so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." *Id.* at 914, 915 (quotation marks omitted).

In addition, despite assuring the magistrate that it would seize only specific records related to the crimes under investigation, the government in fact seized everything it obtained from Mr.

Rivers' Instagram account, regardless of any connection to this case. The government cannot rely on the good-faith exception when it did not make a good-faith effort to follow the limitations it promised to respect when obtaining a warrant.

When the government has violated a defendant's Fourth Amendment rights, he "may seek to suppress not only evidence obtained as a direct result of an illegal search but also evidence later discovered as a result of that search." *United States v. Terry*, 909 F.3d 716, 720 (4th Cir. 2018). Because the Fourth Amendment barred the search and seizure of Mr. Rivers' Instagram account and the *Leon* good-faith exception does not apply, evidence and information obtained or derived from the government's illegal search and seizure must be suppressed.

## CONCLUSION

For those reasons, the Court should grant the motion and suppress evidence and information obtained from the search or seizure of Mr. Rivers' Instagram account, and any evidence and information derived from that search or seizure.

Respectfully submitted,

/s/ Rebecca S. LeGrand
Rebecca S. LeGrand
LEGRAND LAW PLLC
1100 H Street N.W., Suite 1220
Washington, D.C. 20005
(202) 587-5725
rebecca@legrandpllc.com

*Counsel for Tyeshawn Rivers*