\_\_\_ FILED  \_\_\_ ENTERED
\_\_\_\_ LOGGED \_\_\_\_ RECEIVED

2:02 pm, Sep 20 2023

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

JTW: 08.18.23



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Patricia McLane*
*Assistant United States Attorney*
*Patricia.McLane@usdoj.gov*

*Mailing Address:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*Office Location:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*DIRECT: 410-209-4642*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*

August 18, 2023

**VIA EMAIL ONLY**
Pat Woodward, Esq.

> Re:  United States v. Darrell Carter,
> Criminal No. CCB-19-0036 - **019**

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Darrell Carter (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **August 25, 2023**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1.   The Defendant agrees to plead guilty to Count One of the Fourth Superseding Indictment, which charge the Defendant with conspiracy to participate in the affairs of a racketeering enterprise in violation of 18 U.S.C. § 1962(d). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses

2.   The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are that on or about the time alleged in the Fourth Superseding Indictment, in the District of Maryland:

    a.   The criminal enterprise, CCC, identified in the Fourth Superseding Indictment existed;

    b.   That the enterprise affected interstate or foreign commerce;

    c.   That the Defendant was associated with or employed by the enterprise;

     d.     That the enterprise engaged in a pattern of racketeering activity; and

     e.     That the Defendant unlawfully, willfully, and knowingly conspired with two or more persons to conduct and participate in the affairs of that enterprise through that pattern of racketeering activity.

## Penalties

3.     The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 1 | 18 U.S.C. § 1962(d) | N/A | Life | 5 years | $250,000 | $100 |

     a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

     b.     Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

     c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

     d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

     e.     Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

     f.     Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant

Rev. August 2018

authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.     If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be

Rev. August 2018

3

admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a.     This Office and the Defendant further agree that, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2E1.1, the base offense level is the offense level applicable to the underlying racketeering activity.[1]  The underlying racketeering activities are murder, attempted murder, armed robbery, and drug possession with the intent to distribute:

i.     Murder (October 27, 2015): Pursuant to U.S.S.G. § 2A1.1, the base offense level is **43** because the offense involves first degree murder.

---

[1] Pursuant to U.S.S.G. § 2E1.1 note 2, if the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is used.

        ii.      Attempt Murders (June 1, 2016): Pursuant to U.S.S.G. § 2A2.1, the base offense level is **33** because the offenses would have involved first degree murder.

        iii.     Conspiracy to Possess with Intent to Distribute (January 2015 through May 2021): Pursuant to U.S.S.G. § 2D1.1(a)(5)(c)(5), the base offense level is **30**. A 2-level increase applies pursuant to U.S.S.G. § 2D1.1(b)(1) because a dangerous weapon was possessed. The adjusted offense level is **32**.

        b.     Grouping: Pursuant to U.S.S.G. § 2E1.1, application note 1, the offense level for each predicate crime must consider the grouping rules under U.S.S.G. Chapter Three. None of the predicate crimes group under U.S.S.G. § 3D1.2(d) because offenses that fall under the § 2A1.1 and § 2B3.1 guidelines are excluded from grouping. Therefore, pursuant to U.S.S.G. § 3D1.3(b), the murders and attempted murder equal four Groups, and the offense levels for each Group is **43** (murder), **33** (attempted murders), and **32** (narcotics/controlled substance). Pursuant to U.S.S.G. § 3D1.4(c), the Group for the attempted murder offenses and the drug offense are disregarded because they are 9 or more levels less serious than the Group with the highest offense level. Accordingly, the combined offense level remains **43**, the offense level for the highest group.[2]

        c.     This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

        Therefore, the total offense level is anticipated to be **40**.

---

[2]    The parties have agreed that the base offense level is 43 (before acceptance of responsibility) because the racketeering conspiracy involved first degree murder and it is stipulated that the murder referenced in paragraph 6 was committed by the Triple C organization as stated in the factual stipulation. The defendant is not stipulating concerning the murder of Jamere Ricks or the attempted murder of A.J., which are also alleged in the indictment. In a contested trial or sentencing, the government would have presented evidence concerning the non-stipulated acts of violence and the defense would have raised any available defenses. In entering into the plea agreement, the government has taken into consideration the evidence concerning the non-stipulated crimes and Triple C's other activities, and believes that the recommended 25-year sentence is appropriate taking into consideration that evidence.

7.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

9.     The parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that the parties deem relevant to sentencing, including the conduct that is the subject of any counts of the Fourth Superseding Indictment.

## Obligations of the Parties

10.     At the time of sentencing, this Office and the Defendant will make a joint recommendation for a sentence of 25 years' (300 months') incarceration. The parties reserve the right to advocate for a reasonable period of supervised release and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Fourth Superseding Indictment. At the time of sentencing, this Office will move to dismiss any remaining Indictments and open counts against the Defendant. This Office will recommend that the sentence imposed in this case be run concurrently with any Maryland state violation of probation sentence that may be imposed on the defendant as a result of this conviction.

## Waiver of Appeal

12.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

i.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including

Rev. August 2018

6

the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), <u>except</u>:

        i.      The Defendant reserves the right to appeal the sentence of imprisonment that exceeds 300 months; and

        ii.      This Office reserves the right to appeal the sentence of imprisonment that is less than 300 months.

      b.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Forfeiture

13.      The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

14.      Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including a **SAR Arms (SARSILMAX) SAR b6P, 9mm luger semi-automatic pistol bearing serial number T110212601117, and 11 rounds of 9mm ammunition.**

15.      The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

16.      The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

17.      The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable,

statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

18.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

19.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

20.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

21.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Patricia McLane
Michael C. Hanlon
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9/13/23
Date

Darrell Carter

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

9/13/2023
Date

Pat Woodward, Esq.

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Cruddy Conniving Crutball or "CCC" is an Enterprise primarily based in east Baltimore City. The Enterprise's main purpose was to commit violent acts to promote the reputation of the Enterprise and to command respect from the neighborhood. The Defendant, Darrell Carter, is a member of the Enterprise. He and other defendants are responsible for more than a dozen murders and numerous non-fatal shootings, robberies, and carjackings between 2015 and 2020.

The Enterprise benefitted financially from, and affected interstate commerce by, selling narcotics, murdering drug dealers, taking contract killings, and engaging in street robberies. The Enterprise also robbed dice games for cash and occasionally carjacked vehicles. Members of the Enterprise would divide the proceeds of the robberies and murders among members who participated, and often contact each other to commit a robbery if that member needed money.

The Enterprise routinely used social media to identify and locate victims, and to communicate with each other and share information so each member could be aware of possible retaliation. If a member was arrested, other members of the Enterprise would start new communication group chats or threads out of fear of law enforcement finding previous threads from an arrested member and following other members. The Enterprise also existed to conceal their acts.

The Enterprise used at least fourteen firearms to commit crimes, often trading with each other or other groups to avoid detection through ballistic evidence. They limited conversations about criminal plans to members of the Enterprise regardless of the danger such acts posed to associates. Enterprise members also critiqued each other after committing crimes regarding ways to improve their actions.

At least two or more members of the enterprise agreed to commit the following racketeering acts in furtherance of the Enterprise, which are linked together through cell-site information, ballistic evidence, witness testimony, and the contents of the Defendant's and conspirators' cellphones and social media accounts. Specifically, to further the Enterprise, the Defendant participated in the following events:

- the October 27, 2015 murder of Quinton Heard in Baltimore City, Maryland, during which at least one member of the conspiracy fired a firearm, striking and killing Heard;

- the June 1, 2016 attempt murder of A.F. in the 3200 block of Tivoly Avenue, in Baltimore City, Maryland, during which a member of the conspiracy discharged a firearm ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ in an attempt to collect the $10,000 contract on A.F.'s life;
  *Pmw / D MC / pem*
- the November 12, 2020 possession of a Sarsilmaz (SARARMS), SAR B6P, 9mm handgun bearing serial number T1102-12G01117 and loaded with 11 rounds of ammunition in the 2300 block of Harford Road;

In addition to these violent acts, the Defendant also agrees that he agreed to distribute and possession with the intent to distribute controlled substances, in violation of 21 U.S.C. § 846 and that it was reasonably foreseeable that the Enterprise would be responsible for possessing with the intent to distribute over 280 grams of crack cocaine. Evidence of this agreement includes controlled buys by ATF agents in and around the Enterprise's territory; pole camera footage of the drug shop; and social media posts.

The Defendant agrees that he knowingly and willfully became a member of the agreement to participate in the enterprise and that he agreed to commit two racketeering acts, as that term is defined in 18 U.S.C. § 1961(1). The Defendant also agrees that it was reasonably foreseeable to him that a victim could be murdered or shot during the course of the conspiracy.

All events occurred in the District of Maryland.

SO STIPULATED:

Patricia McLane
Assistant United States Attorney

Darrell Cater, Defendant

Pat Woodward, Esq., Counsel for Defendant